■ In the Matter of MICHAEL FORD, Appellant. RUSSELL W., Respondent. [645 NYS2d 27] —Order of the Supreme Court, New York County (Richard Braun, J.), entered on or about December 7, 1995, which ordered the release of the respondent from Manhattan Psychiatric Center, is unanimously reversed, on the law and facts, and the Petition to Retain granted, without costs or disbursements.

After a hearing pursuant to Mental Hygiene Law § 9.33 upon the application of petitioner to retain respondent Russell W. for a period not to exceed six months, the Supreme Court found that petitioner had failed to prove by clear and convincing evidence that respondent was a substantial threat to himself or to others. The court founded its decision in large part on its conclusion that "[a]lthough there is testimony that the patient committed assaultive behavior 10 or more years ago, he is not to be held for the rest of his life responsible for that behavior".

"In order for a hospital to detain a patient for involuntary psychiatric care, it must be demonstrated, by clear and convincing evidence, that the patient is mentally ill and in need of continued, supervised care and treatment, and that the patient poses a substantial threat of physical harm to himself and/or others." (*Matter of Ford v Daniel R.*, 215 AD2d 294, 295.)

There is no question that petitioner met the first two prongs of the involuntary detention test, showing by the testimony of Dr. Ramsetty that respondent was mentally ill and in need of continued supervised care and treatment. With respect to the third requirement that the patient pose a substantial threat of physical harm to himself and/or others, the court improperly emphasized the fact that respondent stabbed his brother and may have assaulted his parents over 10 years ago, finding such behavior too remote and speculative to conclude that respondent was presently dangerous. However, Dr. Ramsetty testified that respondent was currently very angry, paranoid and delusional, talking to himself, believing that the hospital staff is poisoning him with medication and trying to stab him and claiming that his grandfather is Muhammad Ali, who is going to appear at the hospital and kill everyone. In addition, respondent was equivocal when asked whether he would take his medication if released. In Dr. Ramsetty's opinion, if the patient were released, he would not take the medication and conse-

quently would act out his delusions and become assaultive. Moreover, it appears that the court relied solely upon respondent's denial of any criminal history except for drug involvement. The record before the court, however, was replete with references to respondent's criminal history. Thus, the Psychological Assessment at Manhattan Psychiatric Center notes: "It is reported that the patient was incarcerated at Rikers Island for 18 months (on a sentence of 9 to 15 years) until about 1991 for Second Degree Robbery, and that he has been incarcerated several other times, mostly for drug-related activities." On February 5, 1993, the admissions notes at Rockland Psychiatric Center assert: "He has been in jail few times mostly drugs related activities. A year ago he was at Rikers Jail for Second Degree Robbery." The fact that even in the structured hospital setting the respondent is irritable and angry, refuses to take his medicine and the testimony of respondent's present paranoid and persecutory delusions, coupled with the suggestion in the record of a much more extensive (and recent) history of criminal activity, rendered the denial of the petition improper. The fact that respondent has stabilized in the hospital setting does not inevitably lead to the conclusion that respondent will function normally in an outpatient setting (*Matter of Ford v Daniel R.*, *supra*, at 295-296). Accordingly, we reverse and grant the petition. Concur—Rosenberger, J. P., Wallach, Nardelli and Tom, JJ.